Please be seated. Good morning. Before we begin, just one housekeeping matter. We'll take a brief break after the second case that will be orally heard today. We'll actually we have five on the list, but only four will be orally heard. And so the break will occur after Peterson v. Kirsch. With that housekeeping matter, we're ready for the first case, which is 24-2069, United States v. Hahn. Counsel for Appellant, if you would make your appearance and proceed. Thank you, Your Honor. I'm going to do my best to reserve two minutes, although I'm notoriously bad at doing so. Marcus Hahn is actually innocent of the most serious charges he faced when he was sentenced in 2001. He therefore is entitled to pursue this 2255 by proceeding to conclusion and receive habeas relief. Reviewing de novo, the court should reverse. My goal here today would be to start touching briefly on the Sessions v. DeMai issue that relates to the charges that Mr. Hahn is challenging and then tackle the Boozley issue with as much time as I can, particularly focusing on the measure of seriousness that the court should apply in evaluating whether there are more serious charges. Is my understanding correct that you really do have to make it through the issue related to DeMai before Boozley even becomes relevant? That's correct, Your Honor. It's a threshold. But I think that this court, in its opinion, granting the certificate of appealability did a good job summarizing the state of case law and the application of that case law to the relevant predicate charge in this case and went close, but in light of the procedural posture at the certificate of appealability stage, stopped short of making a final ruling on that issue. Under both the plain language of the relevant New Mexico criminal sexual contact statute and under all the law that existed in this circuit and elsewhere at the time of Mr. Hahn's sentencing, it is more likely than not that the district court would have relied on the residual clause to determine that the predicate crime qualified as a crime of violence. Starting with the elements of the crime, criminal sexual contact in New Mexico allows a jury to convict for three reasons. Touching, use of force, which would meet the elements clause, or causing to touch. And at the time of the decision in 2001 when Mr. Hahn was sentenced, all the court's precedent relied on the residual clause, which makes sense because when you have a statute that criminalizes touching or causing to touch, there isn't a physical force element, even without it being defined as it was subsequently. And so what would have made it a crime of violence at that time was the substantial risk of physical force. What does United States v. Posse, P-A-S-S-I, tell us, and how does that inform what's going on here? Your Honor, I'm going to confess that I'm not as familiar with Posse as I am with the three cases that the court had pointed to. The reason, well, continuing with your argument, and I'll follow up, the reason I was referring to it was United States v. Beehill, which is a case that was also, I think, relevant to this issue, cites Posse. And Posse is a case that would have been before the district court in terms of time frame at the time of the sentencing here. And that case seems to support the notion that the elements clause could have been relied upon here is the reason I'm asking. And, Your Honor, I apologize. It's just not a case that the government had focused on Veehill and Pierce. Well, then talk about Veehill. Yes, I will. Because it seems to me that the point I'm getting at is that Veehill, although it's subsequent to the time of the sentencing, also seems to be informed by precedent that existed before it. So what's your view on Veehill, then? Your Honor, first of all, under Snyder, the court doesn't look at post-sentencing decisions. But more importantly — Hence my reference to Posse. I understand, Your Honor. At the time. But what I want to focus on here is that the standard is more likely than not. And so it can be possible that the court could have reached to Veehill and followed that type of analysis to force this into the elements clause. But it's in no way a natural conclusion to reach. Because at that time, this court in 2000 had said, in Reyes-Pena, had looked at both Coronado-Cervantes and Reyes-Castro, and had said, these are residual clause cases. And in, I think it's Coronado-Cervantes, the court had said every appellate decision the court had found relied on the residual clause. And then when you look at the elements of the crime, the natural flow here would be to look at There's no reason that Judge Parker would have had to struggle with whether substantial risk was sufficient to qualify the crime as a crime of violence. Because at that time, section A and section B of section 16 were both on equal footing. And so if you look at what the more likely scenario would have been, if you're the district judge and you pull up a case that says every appellate decision that we found qualifies these types of crimes under the residual clause, and you look at the plain language of the statute, and you see that it involves no requirement for physical force as the least of the conduct criminalized, the natural assumption to make and the more likely assumption to make would be that Judge Parker relied on the residual clause. There just wouldn't have been a reason for them to debate it at the time. And the force of the authority from this court and the plain language of the statute both say, residual clause would have been the straightforward route. Why pause and go through the kind of tortured analysis that Vigil required, which I would also note was very short-lived because later in 2003, when that case was decided, this court held that physical force requires violent force, or the equivalent language, predicting what the Supreme Court would decide in 2010. But of course, what does that do for us? That doesn't do anything for us right now. I mean, we're talking about the background environment that existed at the time, right? Yes. And so I guess the point I would emphasize, Your Honor, is that even if Passey says that it could have been that the district court looked at the elements clause, the more likely answer under both the language of the New Mexico predicate statute and the force of authority from this court and just a reading of Section 16 all says that it would have been a residual clause case. The concept of assault on or contact with a minor, it seems to me, becomes significant both in Vigil and in Passey. The notion that inherent in that interaction is force. Well, I mean, what do you do with that? Your Honor, I think you look at what the court did a couple months later and said that that would not be adequate. Well, I mean, a couple months later really doesn't do us any good. We're sitting here and a court is trying to decide what it should do at the time. Let me ask you to shift a little bit. Yes. There's a language in the cases and at least in this area of litigation that even though Wernder more likely than not, there's reference to the notion that the district court would have been required to apply the residual clause at the time. What do we do with that language? Your Honor, I think you go back to the rule as it was announced in the earlier case and recognize that the more likely than not standard has to mean what it means in common legal parlance. And that was the rule that was established and the fact that in later cases, panels may have used looser language to describe what was required rather than the actual legal standard that we know and use, which is a more likely than not. If the court had meant when it established the rule to say that a defendant must show that the only way that the crime would qualify or equivalent to that or something more than more likely than not, it would have established that rule. And there's been no overruling of the more likely than not standard. Well, we also haven't overruled those cases that use the language, which I'm not going to refer to as loose, but the language that says that the district court would have been required to apply the residual clause in a certain situation. And that would be how you would make your showing of proof. I mean, you look quizzical. Do you follow where I'm coming from? I understand, Your Honor. I guess I'm focused on the concept that an earlier panel decision would bind a subsequent decision. And so the articulation of the rule, absent an en banc panel overturning it, would remain the same. And to elevate more likely than not to the court would have to use a standard, to me, seems like it would be a fundamental change to the court's precedent. Well, I won't belabor the point. But I mean, the issue of an interest, I'm familiar with the interest circuit conflict rule. The question is really whether there is a conflict and whether those two things can be harmonized. And I mean, whether our subsequent cases have attempted to do that. But let's just, for the moment, so that we can pursue the argument, let's stick with this, the more likely than not formulation divorce from this other stuff. And why, in light of the cases that focus on the child component of this, the disparity in power, why would that not have some resonance in this concept? Your Honor, both because of the prior decisions of the court recognizing that these are residual clause cases, but also because as the Fourth Circuit recognized when it overturned Pierce, those are really talking about a substantial risk of force in a different language. Implied force, constructive force, that's very different than the type of force that's required to qualify as a crime of violence. And so when the court decided v. Hill, it looked at this concept in the alternative, having already determined that it would have qualified as a residual clause case. And you have this concept of force that both doesn't survive under today's law and doesn't make sense that it would have been the route Judge Parker would have chosen to take. It's more likely that he would have taken the obvious path, which would be substantial risk of harm. And even divorce from the required to formulation, which does exist, v. Hill applied it in the alternative. Well, in the alternative doesn't get you over the hump. And I know it's a subsequent case. But the point I'm getting at is, if the concept is as such that the court could have said in the alternative, I would apply the elements clause, you've got to show us that it would not have been, in essence, a viable alternative. It would have been more likely that the court would have chosen to do one over the other. If they're in equipoise, you lose, right? Equipoise under more likely than not, I would lose. OK. So why does the analysis in v. Hill not suggest that they were in equipoise and they were just alternatives that the court could have chosen? Both because the court had previously so clearly articulated that the cleanest route to categorize a criminal sexual contact statute as a crime of violence was through the residual clause. And if, assume Judge Parker's going into sentencing and he looks at the state of the law and he sees Reyes-Castro, Coronado-Cervantes, and Reyes-Marina, if I'm maybe getting the last name wrong, those are all going to point to what common sense would tell you in this area if you looked at Section 16. Why would you force it into the elements clause when you have a substantial risk of physical force? Because the substantial risk of physical force route, if you had no precedent, it's a much more straightforward route. I mean, it's muddied by the fact that we're dealing with a conviction here and we're on habeas. But the reality is that's a very straightforward application of Section 16 to the New Mexico statute. There's nothing about that statute that says physical force is the least of the acts criminalized. And so you'd say, well, I don't need to belabor that point because Section B says that as long as there's a substantial risk and in criminal sexual contact, there is a substantial risk. And so when you're looking at more likely than not, assuming that they would be in equal poise under the state of the law as it existed or under the language of the statute, I just don't see how it would get you to equal poise in that area. Can I ask you to focus on the Boosley issue? Yes. And on that, Your Honor, the most important thing I'd like to focus on is the open question of the method of determining seriousness, because this court hasn't done it and the other circuits are coming at it from Boosley from a range of different perspectives. And you lose unless we measure severity using the guidelines, don't you? Not necessarily, Your Honor, because then the second question would be, do you apply Boosley to equally serious? Well, right. You don't have to reach that question if we if we go your route. Right. And I think the correct way to read Boosley would be you start out and you determine were there dismissed charges as part of the plea? We have that here. Then you evaluate the seriousness of them. And Judge Garland's decision in Casso articulates the only principles that really would make the Boosley rule make sense. It's a difficult case because there's not a lot of explanation to Justice Rehnquist's imposition of the more serious charges. But the guidelines are the only metric that provides you information about what would have dictated the negotiations around a plea. And there has to be some compelling reason to require a defendant to show innocence of a crime to which he's neither pleaded guilty nor been convicted. And so you have to be looking at what was the nature of the agreement that was reached. I think it's it's difficult to understand why you're making people show innocence of charges for which they haven't been convicted. But the guidelines are the metric that give you information that would have been relevant. Congress's statutory maximums and even statutory minimums, which are incorporated into the guidelines analysis, don't give you any relevant information. And so before adopting that metric, I would ask the court to very seriously consider what's the principle that motivates Boosley and then determine what the rule is that actually furthers that purpose. And that would point to the guidelines. Did Mr. Hahn make the guidelines argument in the district court? Your Honor, he did not expressly articulate this far down in the analysis. I'm out of time. Can I answer?  He didn't say the better metric is the guidelines. But what he did do is he cited CASO. He consistently argued that the district court needed to consider these less serious charges. And if you look at the I've got a district court page reference, DNM 103 and 104, gives you a view of the lengths he went to as an unrepresented party to articulate the issues here. As a prisoner, he doesn't even have access to his pre-sentence investigation report. It was required for me to do what may not have even been an entirely perfect analysis of the guidelines. But they do show there's a dramatic disparity between the 841 charges and what would have happened if you substituted the 2251 charges. And does and what about our COA that we granted? Does it does it? It doesn't mention this this particular issue either in terms of the distinction between the guidelines and the statutory limits. The COA does does not, Your Honor. But it's implicit in the rule in the COA granting Mr. Braun the opportunity to pursue a claim for that the district court erred in applying Boozley. And I don't remember the exact language, but the district court got it wrong in that. Moreover, I would ask the court to look at United States v. Baker before shutting the door, because that case allows an expansion of the COA if there's room for reasonable debate among jurists. And I think there certainly would be here. And as I predicted, I failed to preserve time for rebuttal, but I appreciate your time here this morning. We'll give you a minute, counsel. Thank you. Morning, Your Honors. May it please the court, Tiffany Walters for the United States. I'd like to start by refocusing on the procedural posture in which Han finds himself. He faces two threshold inquiries in this case. First, he needs to show to overcome his second or successive bar that his claim is grounded, is based on demia. But also because his claim is untimely, even if he were able to do that, he would also have to show that he could satisfy the extremely demanding and rarely satisfied actual innocence exception. This appeal presents the question, actual innocence of what? In this case, Han made a bargain. He pleaded guilty to seven counts, and in exchange, the government dismissed nine counts that he would have otherwise had to face trial on. And two of those counts carried a 10-year mandatory minimum, which is really a pivotal driver in how parties plea bargain. In the context of a guilty plea, Boozley tells us that at a minimum, Han must demonstrate that he is actually innocent of his 841 counts, plus any more serious counts. And here, because of the mandatory minimum in the 2251 charges, those are the most serious counts. And considered cumulatively, with the seven counts, those discounts are also... But the mandatory, we're trying to basically recreate the plea bargaining process with the charges dropped now that he was actually pled to. And in recreating it, we don't really recreate it by focusing on the statutory limitations. That's not the focus of pleas. And why would it be the focus here? Why wouldn't we look at what the guideline calculation would have been on the more serious offenses, just as Boozley told us to do? That's what would have happened had these charges not been there, had they not been part of the plea negotiation process. I would respectfully disagree on mandatory minimums because I believe even with the mandatory minimums control, and they would control the district court's discretion in sentencing. And so those actually play quite a strong role in negotiations. They control, but they don't determine the sentencing guideline range, which is what the parties generally, both the government and the defendant, rely on in considering whether to plea. What's that sentencing guideline range going to be? Certainly, that is one factor. But I do think it's a huge factor. But as are mandatory minimums, because even within that sentencing guidelines, the district court cannot go below that. The defendant cannot ask for a downward variance. And because of that, I mean, we see this in a number of these cases. They're revolving around 924C cases where there is a mandatory minimum in the Sixth Circuit case, the Seventh Circuit case. So these are really significant issues. In addition to the waiver issue, which I'll come back to and we still maintain that, I think guidelines present a real challenge because what we have is a situation like here. We're two decades down the road. We're trying to recreate what the sentencing guideline calculation would have been. Did anybody challenge that? Do you challenge what that would have been here? I don't I didn't get the impression it was all that difficult here. Well, and everybody seems to agree on what it would have been. I don't disagree that it likely would have been lower, but I think then we have to put ourselves back. Well, you're suggesting that it's going to be so complicated to determine this guideline. Well, I'm not sure that generally that's going to be true. I think in this case, first, you would be able to get the base offense level, but you have to figure out specific offense characteristics. In this case, perhaps we can, but that's not going to be true in all cases because it's not going to be covered in the PSR if the defendant didn't. And if we're trying to recreate the I guess I'm not sure why that even I understand that's a point that you make in your brief, that it could be a complex process. It could be a difficult process in some cases, but I'm not sure that should be guiding our decision when we're trying to put this defendant back in the place that he would have been. I mean, right. And we're going to say, oh, well, it's too difficult for us to do that. So we're going to bypass it. Well, and I think if we went back to where the defendant would have been in this case, we don't know whether or not the court would have departed. If we look to the sentencing transcript, we hear the court talking about and in this case, there was a second case involving drug and guns. The court was heavily focused on the fact that it believed that the defendant would be in prison for the rest of his life. And that's how it placed the sentence within the guideline range that it did. So it's hard to say what this how that would have played out. I mean, had had the court believe that it was looking at a guideline range that went down as low as 12 and a half years for the sexual assault of seven children, would the court have departed? I mean, I don't think we can know that. There's so many variables. And in the context of the 2255s, we're in collateral review. The concepts of finality and judicial efficiency are important. So the court is looking at this just to determine whether or not it should even hear an untimely motion. And so to require the district court to conduct basically a mini sentencing to even determine whether or not it can get in the position of looking at the claim is a significant burden on the district court. And so that's another reason why looking at least at the mandatory minimums would provide a much more administrable standard for the court to look at. In addition, we have the complication of the situation here where we have a whole number of counts that he pled guilty to, as well as a number of counts that were dismissed. The Fifth Circuit decision in Scruggs provides another example of how the court might look at dealing with this cumulative effect of the charges. So in this case, we had seven counts which were foregone. And at some point, I mean, it might not make sense to just compare the top statutory maximum on one side with the top statutory maximum of the foregone charges. It doesn't take into account the number of other charges that were dismissed. But accumulating them would. And so that's another perspective the court could take to find that the charges that were foregone were more serious in this case. Yeah, I guess I still question, I mean, Bowsley tells us we've got to recreate the outcome. And they don't say you have to recreate it in every single possible scenario that might have come up. You've got to do the best you can in this scenario. And I think if you're going to anticipate that any possible issue that might have arisen, I don't think that's what Bowsley is talking about. I mean, I think Bowsley doesn't give us a ton of guidance. They don't. That's sort of the difficulty. But can recreate the outcome, which they explicitly said they're trying to do. I just don't think it's possible to to take the approach you're taking and do that. I think there's challenges to recreating the outcome, regardless of what path this court chooses, and none of them are going to be perfect. I think looking at least to mandatory minimums, which truly do drive a lot of plea bargains, is a fair place to look in terms of evaluating what is the most serious charge. So I think that that is a place that the court can consider. And then in this case, we have the additional issue with the guidelines that it truly was waived. And we're in the context of a 2255. This is not plain error review, as Judge Holmes discussed in his concurrence in Herman B. Sharpe. This is a situation where it's the court doesn't consider it at all. And here, not only did the defendant not raise the guidelines issue, he specifically told the district court to look to the statutory penalties in his argument. He said, look to the presence or absence of a fine. And so for the district court, the district court did not have the guideline issue before and had no way to know that it should have, you know, created this argument for the pro se movement in that situation. So it's really in the context of a 2255, on collateral review, the court should not reach that question simply because it is waived and the court cannot consider it. I guess I would like to move to the actual DiMaia issue, if the court doesn't have any other questions on actual innocence. And could you comment on whether we should excuse the statute of limitations here or your rebuttal on that? Whether the court, whether the United States does not believe that this court should excuse statute of limitations because that turns on the actual innocence issue. Here, we believe that the defendant, even if he can show that he's actually innocent of the 841 charges that are subject to the DiMaia claim, he cannot show that he's actually innocent of the 2251s that were dismissed in exchange for his plea of And those carry a mandatory minimum of 10 years and a maximum of 20 years, while the 841s have no mandatory minimum. In addition to that, there's a total of seven charges that were dismissed, which I think cumulatively is something like 90 years if you total up the statutory max, compared to the 60 years with the three 841s that are challenged. And unless the defendant can pass through that actual innocence portal, both as to the 841s and any more serious charges, he cannot have his untimely claim heard. And even if this court were to find that they were equally serious, the United States would urge the court to adopt the rule that both the Sixth and the Seventh Circuit has and of which the D.C. Circuit has approved and find that this applies equally to equally, I'm sorry, also applies to equally serious charges. And I think that makes a lot of sense in this context, because as the court has highlighted, it is a difficult inquiry. Well, let me be clear on that. You're saying one of the COA issues related to equally serious charges, but it was framed, as I understand it, as a question because Bealsley speaks of more serious. So are you conceding that equally serious charges should be in the mix, too? Or are you saying they should be? The United States' position is that there are more serious charges in this case, but if the court wants, believes that they are instead equally serious, that then the court should extend the Bealsley rule to equally serious charges as the Sixth and Seventh Circuit have done.  And equally serious charges, it makes sense to extend it in that context because we have a situation where had the United States known of the infirmity in the charges, it would have switched to the equally serious charge. The defendant would be facing the same situation. There's no reason for the defendant to benefit from the bargain, which he's now seeking to get out from under by escaping any punishment on the equally serious charges that he would have otherwise had to face trial on. So as I conceive of this case, or at least the barriers that the defendant movement faces, one, you have to deal with the denial issue. Did the court, in fact, rely on the residual clause? Two, you have to deal with the Bealsley issues or Basley issues, which would be one, the question of the more serious charges, and two, under your view, the equally serious charges. So there are three gates, at least, the defendant has to go through before he gets relief, right? Because he has to do the equally, the actual innocence as it relates to the statute of  Correct. And perhaps even a fourth step, because he would have to show that he's actually innocent of 841 charges, which sort of is the same issue as the DeMaia issue. Yeah, it's the same issue. So those are conflated. Right. OK. If the court has no further questions on the DeMaia issue, then the United States would rest on its brief. Thank you for your time. Thank you, counsel. Briefly, I'd like to touch on Judge Moritz's questions regarding the back and forth on the sentencing guidelines and whether they could be difficult. As a habeas petitioner, if there's difficulty in calculating the guidelines, that falls on the petitioner. And so to the extent, in this case, it's straightforward. If you imagine some hyper complicated sentencing where the guidelines are a mess, you still end up in a circumstance where it doesn't put the court adrift. It just means that the burden for the petitioner in a habeas context is higher. And so I think that resolves that issue. Then I would ask the court again to just focus on what is the principle motivating Boozley? Because you have to tie whatever the imposition is. This is an unusual circumstance where you are asking a defendant to show, having already met the requirement of showing actual innocence of charges that are underlying their sentence and leaving them in prison, to also show innocence of dismissed charges. And so there's got to be a tie between A and B. And I didn't hear the government articulate that. Thank you, counsel. Case is submitted. I need to comment, like maybe the first case I ever sat on involved Mr. Hahn back in 2003. So here we are.